IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>ERIC KAMAHELE, et al.,<br><br>        Defendants. | ORDER AND MEMORANDUM DECISION<br><br>Case No. 2:08-CR-758-TC |

**INTRODUCTION**

In an earlier order, the court held that Officer Break Merino is qualified to testify as an expert on <u>general</u> subjects covering the background, structure and organization of the Tongan Crip Gang (TCG), that is, 1(A) through 1(N) of the United States' Supplemental Notice (Dkt. No. 517).  But the court took under advisement whether Officer Merino may offer expert testimony on the issue of the individual Defendants' membership in or association with TCG. On September 9, 2010, the court held another evidentiary hearing on the question of Officer Merino's proposed testimony on the eight Defendants and their association with TCG.  Now, after reviewing the testimony, hearing oral arguments, and reading the parties' memoranda, the court holds that Officer Merino is qualified to give his opinions about the Defendants and their association with TCG.  But, as explained below, in making this decision the court excludes some of the proposed bases of Officer Merino's testimony.  Accordingly, Officer Merino may not rely on these excluded bases when testifying at trial.

**BACKGROUND**

Following the Daubert hearings involving Officer Merino on May 6 and July 13, 2011, Defendant David Kamoto filed a Motion To Compel Gang Records (Docket No. 691), seeking production of the gang field cards that Officer Merino testified he relied on in forming his opinion that the Defendants are members or associates of TCG. On August 17, 2011, United States Magistrate Judge Samuel Alba granted Mr. Kamoto's Motion To Compel and ordered compliance by the Government no later than August 25, 2011 (Docket No. 772). The Government did not object to Judge Alba's order. On August 26, 2011, Mr. Kamoto filed a Motion For Order To Show Cause Regarding Violation of Order To Provide Gang Information (Docket No. 833), contending that the Government had not produced the gang records as required by Judge Alba's order.

On September 2, 2011, after holding a hearing on the matter, Judge Alba granted Mr. Kamoto's Motion For Order To Show Cause. Specifically, Judge Alba ordered "that copies of the flash drive containing the gang records in question be duplicated and a copy is provided to each defendant's counsel by 5:00 p.m. on 9/2/2011." (Docket No. 902.) The Government objected to Judge Alba's order (Docket No. 905) and requested a stay pending review of its objection (Docket No. 904). That Friday afternoon, the court affirmed Judge Alba's order but temporarily limited the way in which the disclosed information could be used. (Docket No. 911.) The next Tuesday, September 6, 2011, the court held a follow-up hearing, after which the court amended its previous order and required that the unredacted information be viewed by attorneys only and that if counsel for the Defendants were to make any hard copies of the information, they must redact the copies. The copies could then be used during trial but the information may not

be used to contact victims or witnesses. (Docket No. 942.)

In preparation for the September 9, 2011, Daubert hearing, the Government produced a list of factors that support Officer Merino's opinion that each Defendant is a member or associate of TCG (Daubert Ex. 3). During the hearing, the Defendants were able to cross-examine Officer Merino about the listed bases for his opinions.

**ANALYSIS**

**A.     Standard of Review**

The court initially believed that it would consider all the types of information cited by Officer Merino as forming the basis of his opinion when the court acted as a "gatekeeper," that is, when the court decided whether Officer Merino could testify as an expert on this issue. Then the court would make a separate determination about the information Officer Merino could use when testifying at trial.

The court has since changed its view of the procedure it must follow. The court must decide the appropriate bases of Officer Merino's proposed opinions when the court undertakes its gatekeeper analysis. Then, during trial, Officer Merino may rely on the approved bases when testifying. To proceed otherwise would not be helpful to the jury or to counsel. But the court cautions all parties that even if the court allows Officer Merino to base his opinion on certain information, that does not necessarily mean that this information can be disclosed to the jury. Federal Rule of Evidence 703 allows an expert to base opinions on inadmissible facts or data.

**B.     Prohibited and Approved Bases**

There is one category of information on which Officer Merino cannot base his opinions: information that has not been provided, in some form, to the Defendants. But the court has

3

carefully considered the bases which are left and finds them relevant and reliable and, as discussed in the court's first Daubert order (Docket No. 876), finds that Officer Merino is thoroughly qualified through his experience and training to express those opinions.

### 1. Information That Was Not Disclosed

To force Defendants to cross-examine Officer Merino at trial without adequate notice of certain bases supporting his opinions would not be appropriate in this case, where the issue of disclosure has been the subject of extensive litigation, resulting in several court orders. Moreover, to permit such testimony would be contrary to the intention of the Federal Rules of Evidence. See Fed. R. Evid. 705 advisory committee's note (1992) (advisory committee "assumes that the cross-examiner has the advance knowledge which is essential for effective cross-examination").

Because certain information was not disclosed, Officer Merino may not use the following as a basis for his opinion: any information from alleged sources of that information whose identities were not given to Defendants. These sources include those whom Officer Merino described as "reliable source," "witnesses and victims," "church leaders," "concerned citizens," "concerned members of the community," and non-testifying "co-Defendants." (Daubert Ex. 3.)

This list is not exclusive. If, during trial, any Defendant's counsel believes that Officer Merino is relying on undisclosed information, she or he may object.

### 2. Violation of Confrontation Clause

Defendants contend that some of the information supporting Officer Merino's proposed testimony violates their Sixth Amendment right to confrontation. To some extent, the court agrees. Certainly statements made by non-testifying Co-Defendants and "testimonial" statements

4

by unavailable speakers would violate the Confrontation Clause if offered directly to the jury. But, as recognized by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), not all hearsay implicates the Sixth Amendment's core concerns. The Confrontation Clause applies to "testimony," which "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Ross Andrew Oliver, Testimonial Hearsay as the Basis for Expert Opinion: the Intersection of the Confrontation Clause and Federal Rule of Evidence 703 After *Crawford v. Washington*, 55 Hastings L.J. 1539, 1544 (2004) (quoting Crawford, 541 at 51).

Under Federal Rule of Evidence 703, an expert witness may base his or her opinion on inadmissible evidence as long as the evidence is of a type reasonably relied upon by experts in the field. Fed. R. Evid. 703. Accordingly, "[s]ometimes the facts upon which an expert bases an opinion amount to testimonial hearsay and present a risk of violating a defendant's constitutional right to confrontation." Oliver, Testimonial Hearsay, supra, at 1556. The Second Circuit has held that an expert's reliance, in the form of "repetition of out-of-court testimonial statements made by individuals during the course of custodial interrogations violate[s] [a defendant's] rights under the Confrontation Clause of the Sixth Amendment." United States v. Mejia, 545 F.3d 179, 199 (2nd Cir. 2008).

But, "[i]n a case where an expert forms an opinion from many sources, including his own experience, rather than simply relating testimonial hearsay to the jury, there is less risk of a Confrontation Clause violation." Oliver, Testimonial Hearsay, supra, at 1558. Consistent with this principle, the court in United States v. Johnson, 587 F.3d 625 (4th Cir. 2009), rejected the defendants' arguments that the expert testimony of two police officer experts violated the

5

Confrontation Clause because the experts based their opinions in part on inadmissible testimonial hearsay. The court noted that "Crawford forbids the introduction of testimonial hearsay as evidence in itself, but it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence." Id. at 635. The court clarified that "[a]n expert witness's reliance on evidence that Crawford would bar if offered directly only becomes a problem where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." Id. But, "[a]s long as [the expert] is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no Crawford problem. The expert's opinion will be an original product that can be tested through cross-examination." Id.

In this case, Officer Merino applied his individual judgment and "expertise, derived over many years and from multiple sources" to arrive at his opinion that the Defendants are members or associates of TCG. See Johnson, 587 F.3d at 636. Accordingly, Officer Merino's proposed opinions and the bases for them do not violate the Defendants' right to confrontation.[1] Bearing in mind that Officer Merino may not base his opinions on information from undisclosed sources, counsel for the Defendants may object if they believe that Officer Merino has crossed the line into simply recounting inadmissible testimonial hearsay evidence.

---

[1] The possibility of a Confrontation Clause problem is substantially decreased by the court's ruling that Officer Merino may not rely on statements made by undisclosed sources. These statements comprise most, if not all, of the testimonial hearsay statements that Officer Merino relied on.

**C.     Rule 404(b) Evidence**

Several Defendants object to Officer Merino's proposed testimony, claiming that he relies on Rule 404(b) testimony that the court held inadmissible or that the Government had agreed not to use.

In May 2011, the Government filed a lengthy notice of intent to use certain evidence under Rule 404(b) of the Federal Rules of Criminal Procedure.  (See May 26, 2011, Notice of Intent to Use Certain Evidence Pursuant to 404(b) (Docket No. 597).)  The original notice listed ninety-three specific incidents and twenty-four generic categories of documentation ("prison documentation" and "case history summary" for various Defendants).  (Id.)  During a July 13, 2011, hearing, the court, based on objections from the Defendants and the Government's oral modification of the list of proposed 404(b) evidence, ordered the Government to submit an amended notice of the specific 404(b) evidence the Government intended to use.

The Amended Notice listed five specific incidents.  (See July 21, 2011, Amended Notice of Intent to Use Certain Evidence Pursuant to 404(b) (Docket No. 665).)  During a subsequent 404(b) hearing, the court excluded all but one of the incidents.  (See Aug. 12, 2011, Order on 404(b) Evidence and Other Pretrial Matters (Docket No. 751).)

The withdrawn and excluded 404(b) incidents relied upon by Officer Merino are not being offered as evidence for the truth of the matter asserted.  The evidence is admissible under Rule 703 of the Federal Rules of Evidence, which reads as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or

> data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Officer Merino is properly relying on facts or data that are not admissible for other reasons but are legitimate bases for his opinion (i.e., they are evidence that an expert in his field would reasonably rely upon). Accordingly, the objections are overruled.

### D. Assisting the Jury

Defendants' final contention is that Officer Merino's proposed testimony on each Defendant's membership in or association with TCG would not be helpful to the jury. They argue that members of the jury are fully capable of drawing their own conclusions from the evidence, such as whether the tattoos and gang signs show that a Defendant is a member or associate of TCG. This is not so.

The requirement in the Federal Rules of Evidence that expert testimony must be helpful to the trier of fact "marks a significant departure from the common law of evidence, which required that expert testimony be necessary, rather than merely helpful, to the finder of fact." 4 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 702.02[03], 702-10 to -10.1 (2011). "Under the Federal Rules of Evidence, if the expert's evidence will assist the finder of fact in any way in determining the factual issues before it, the evidence is admissible." Id. at 702-10.1 to -11; see also United States v. Brawner, 173 F.3d 966, 969 (6th Cir. 1999) ("It is, of course, well settled that 'necessity' is not a condition precedent for the admissibility of opinion testimony under Federal Rule of Evidence 702; rather, the test is whether the opinion 'will assist the trier of fact.'"). In the Tenth Circuit, "[d]oubts about whether an expert's testimony will be

8

useful 'should generally be resolved in favor of admissibility.'"  Robinson v. Mo. Pac. R.R., 16 F.3d 1083, 1090 (10th Cir. 1994) (quoting 4 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 702[02], 702-30 (1988)).

Here, Officer Merino uses his many years of experience to evaluate and synthesize multiple pieces of evidence to determine whether a particular Defendant is a member or associate of TCG.  Although the jury may be able to look at each individual piece of evidence and draw a conclusion about each Defendant's relationship to TCG, Officer Merino's testimony will assist the jury in evaluating the totality of the evidence relating to a particular Defendant and the interplay between and the significance of the individual pieces of evidence.  It is enough that Office Merino's testimony will assist the jury; it need not be necessary to the jury's understanding of the evidence.

## ORDER

For the foregoing reasons, the Defendants' motions on this matter (Docket Nos. 362, 540, 544, 740, and 928) are DENIED subject to the conditions set forth in this order.

SO ORDERED this 19th day of September, 2011.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge