SCOTT KEITH WILSON, Federal Public Defender (#7347)
BENJAMIN C. McMURRAY, Assistant Federal Public Defender (#9926)
FEDERAL PUBLIC DEFENDER OFFICE
Attorneys for Defendant
46 West Broadway, Suite 110
Salt Lake City, Utah 84101
Telephone: (801) 524-4010
Fax: (801) 524-4060

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>ERIC KAMAHELE,<br><br>  Defendant. | MOTION FOR<br>COMPASSIONATE RELEASE<br><br>Case No. 2:08-CR-758 TC |

Eric Kamahele, through counsel, asks this court to grant compassionate release because he was convicted of "stacked" § 924(c) convictions under a law that was eliminated in the First Step Act of 2018 (FSA). The 30-year sentence for crimes he committed as a young adult, his outstanding record while in prison, and other unique facts of his case are an extraordinary and compelling circumstance that warrants relief under 18 U.S.C. § 3582(c)(1)(A).

## BACKGROUND

Eric Kamahele was one of several defendants prosecuted for their involvement in the Tongan Crip Gang (TCG). He was convicted for participating in two armed robberies, which included two counts of violating 18 U.S.C. § 924(c). As a result of these two § 924(c) convictions, the court imposed a sentence of 30 years in prison. Mr. Kamahele was just 21 years

1

old at the time of his crimes. If he is required to serve his full sentence, he will be 51 years old when he finally is released from prison on June 6, 3038.

Mr. Kamahele deeply regrets his actions and the harm he caused other people. He believes he is a totally different person than he was at the time of his crimes. Since coming to prison, he has not had *any* disciplinary violations. This fact by itself is sufficiently unique and extraordinary to warrant compassionate release.

Instead of causing problems in prison, he has been hard at work improving his life and serving others. While in prison, he has taken several Adult Continuing Education (ACE) classes that will prepare him for working and living in the community. He has also had several jobs in prison, working at various points in the laundry, grounds keeping, referee in the recreation department, religious services clerk, and unit orderly. He has also served as a volunteer group leader in his religious services.

Additionally, Mr. Kamahele has a solid release plan for his return to the community. Upon release, he will live with his wife Joanne Bradfield in Midvale, Utah. Although they have not yet been civilly married, they have been married in a religious service while he's been in prison. She has fulltime employment and no criminal record, so she is able to support them while he gets on his feet. Ms. Bradfield has transportation and we access to his social security card and birth certificate, so he can get a driver's license right away. Besides Ms. Bradfield, he has outstanding family ties and support. His parents also live in Midvale and will be a supportive relationship for him when he releases. And he remains close with his sister, who recently moved to Ireland but maintains frequent communication and has provided financial assistance while he's been in prison.

Although he does not yet have a job lined up, his plan is to register with a temp agency upon his release. He also hopes to enroll at Salt Lake Community College. While in prison he has become very interested in sociology and psychology and would like to study in those fields. He hopes to participate in SLCC's Utah Reintegration Project, which focuses on helping felons return to the community. Through URP, he hopes to influence at-risk youths to follow a better path than the one he took.

## ARGUMENT

The court is surely familiar with the standards applicable to a motion for compassionate release. Under 18 U.S.C. § 3582(c)(1)(A), an inmate may seek compassionate release directly from the court if he has first presented his request to the prison warden. Thirty days thereafter, the court may reduce a defendant's sentence "if three requirements are met: (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021). Because Mr. Kamahele meets all of these criteria, the court should grant him compassionate release.

### I.   Mr. Kamahele presented his request to the warden more than 30 days ago.

This court may consider Mr. Kamahele's motion because more than 30 days have passed since he made this request to the warden. He first requested release in August or December of 2020. After a new warden came to the prison, he submitted another request in March 2021. He was not allowed to keep a copy of those requests, but he affirms that both of these requests were based on changes made in the First Step Act to § 924(c) stacking. Because more than 30 days

have passed since he submitted those requests to the warden, this court may now consider the merits of his motion.

>   II. **Mr. Kamahele's sentence imposed under a threat of "stacked" § 924(c) sentences, when viewed in light of his "unique circumstances," is an extraordinary and compelling reason to grant relief.**

>   A. *Mr. Kamahele's original sentence was unlawful.*

Perhaps the most unique circumstance about Mr. Kamahele's case is that the Supreme Court has effectively vacated one of his § 924(c) convictions. Mr. Kamahele filed a § 2255 motion challenging his § 924(c) convictions, which this court denied as untimely. The Tenth Circuit affirmed, but the Supreme Court reversed in light of its recent decision in *Borden v. United States*, 140 S.Ct. 1262 (2021). *Kamahele v. United States*, 20-7749 (U.S. Oct. 4, 2021).

*Borden* invalidates Mr. Kamahele's conviction for § 924(c) based on VICAR. The government has already conceded that this VICAR conviction, which was based on Utah aggravated assault, could be committed recklessly:

> Kamahele is correct about the Utah offense. Under Utah's general intent statute, recklessness can suffice if a statute is silent about mens rea. Utah Code Ann. § 76-2-102. Under the version that applied in 2008, it was understood that assault—even assault with a dangerous weapon—could be committed recklessly. *See State v. Berriel*, 262 P.3d 1212, 1218 (Utah Ct. App. 2011).

*Kamahele v. United States*, 2:15-cv-506, Doc. 21 at 20 (D. Utah Nov. 16, 2016). Thus, following the Supreme Court remand based on *Borden*, it necessarily follows that one of Mr. Kamahele's § 924(c) convictions is unconstitutional and must be vacated. While the Supreme Court's ruling will inevitably make its way back to this court, there is no just reason for Mr. Kamahele to remain incarcerated in the meantime. The fact that the denial of his § 2255 motion has now been reversed is an extraordinary and unusual circumstance that warrants immediate release.

### B. *Mr. Kamahele presents the same circumstances that the court relied on in Maumau.*

Until Mr. Kamahele's second § 924(c) conviction is vacated, the fact that he was punished under "stacked" § 924(c) sentences is another extraordinary and compelling circumstance "in the context of an individualized review of [his] circumstances." *United States v. Maumau*, 993 F.3d 821, 838 (Tymkovich, C.J., concurring). In *Maumau*, this court reduced the defendant's sentence because of his "young age at the time of the sentence, the incredible length of the mandatory sentence imposed, and the fact that, if sentenced today, he would not be subject to such a long term of imprisonment." *United States v. Maumau*, 2020 WL 806121 *7 (D. Utah 2020). The Tenth Circuit affirmed this court's finding that this trio of facts were extraordinary and compelling. 993 F.3d at 837.

Mr. Kamahele presents these very same facts. He was only 21 years old when he committed these crimes. Like his codefendant Kepa Maumau, his sentence was determined by stacked § 924(c) convictions that no longer apply after the First Step Act. It is inconceivable that Mr. Kamahele would receive a 30-year sentence if he were sentenced today for the same convictions, including a second § 924(c) conviction. And like Mr. Maumau, he was offered a 10-year plea deal.[1] In contrast to Mr. Maumau, however, Mr. Kamahele has a spotless disciplinary record in prison. So if relief was warranted for Mr. Maumau, it is warranted more so for Mr. Kamahele. The absence of any disciplinary record in prison, his record of work and

---

[1] Unlike Mr. Maumau, Mr. Kamahele actually accepted the offer and pleaded guilty, but he later withdrew his guilty plea. After his conviction was final, he sought § 2255 relief on the ground that the withdrawal of his guilty plea was the result of ineffective assistance of counsel, and it appears this court would have granted a hearing on this claim had it fully understood the claim raised in the pro se petition. *Kamahele v. United States*, 2:15-cv-506, Doc. 60 at 9 (D. Utah Apr. 3, 2018).

programming in prison, and his solid plan for reentry are unique circumstances that warrant relief. For the reasons this court granted compassionate release for Mr. Maumau, it should do so now for Mr. Kamahele.

### III.     A reduction is warranted under § 3553(a).

As noted above, § 3582 requires any reduction to be consistent with Sentencing Commission policy statements and § 3553(a). However, because the Commission's policy statement USSG §1B1.13 applies only to compassionate release requests filed by the warden, it is not "applicable" to motions filed directly with the court. *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021); *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021). Thus, the only remaining issue is whether a reduction is consistent with § 3553(a).

Although his original crimes were serious, to be sure, the 30-year sentence originally imposed was not a result of sound sentencing policy but of the now-defunct stacking provision in § 924(c). Now that the stacking provision has been eliminated, and one of Mr. Kamahele's convictions is about to be vacated, there can be no credible argument that the original sentence comports with § 3553(a). Thus, the court should grant a reduction.

### IV.     The court has authority to order home confinement.

Any concern that Mr. Kamahele poses a danger to the community is fully answered by the absence of any prison disciplinary record. However, should concerns linger, the court may impose a term of home confinement to address any such concern.

While the court lacks authority to order the BOP to place Mr. Kamahele in home confinement, § 3582(c)(1)(A) clearly authorizes the court in connection with the imposition of a new term of supervised release to impose that new term "with or without conditions." Should the court conclude something more is needed to satisfy § 3553(a), it can accomplish that by imposing home confinement as a condition of supervised release.

6

Given the fact that Mr. Kamahele has plans for stable housing and employment, and given how much time he has already spent in prison, requiring home confinement would be "greater than necessary" to satisfy § 3553(a). Mr. Kamahele encourages the court not to require home confinement, but he wants to be clear about the court's authority to impose that if necessary.

## CONCLUSION

Mr. Kamahele's sentence was excessive when it was imposed. While the sentence was statutorily required at that time, § 3582 now allows the court to recognize that excess and grant compassionate release. The excess is particularly pronounced in light of the changes to the FSA and the Supreme Court's ruling in Mr. Kamahele's § 2255 case. He asks the court to exercise compassion and reduce his sentence to 10 years in prison.

DATED this 21st day of October, 2021.

>*/s/ Benjamin C. McMurray*
>BENJAMIN C. McMURRAY
>Assistant Federal Public Defender